UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────────────────────────────────

| | |
|---|---|
| KELLI D. HAKE and MATI GILL, | Index No. 19-mc-00024 (VEC) |
| Plaintiffs, | DECLARATION OF CARRIE SEARS IN PARTIAL OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH NON-PARTY SUBPOENAS AND IN SUPPORT OF CROSS-MOTION FOR A PROTECTIVE ORDER |
| -against- | |
| CREDIT SUISSE AG, WELLS FARGO BANK, N.A., THE BANK OF NEW YORK MELLON and ING FINANCIAL HOLDINGS, LLC, | |
| Defendants. | |

───────────────────────────────────────────

CARRIE SEARS, pursuant to 28 U.S.C. § 1746, declares the following to be true under penalty of perjury:

1. I am a Vice President and Compliance Manager in the Funds Transfer Special Investigations ("FTSI") group at The Bank of New York Mellon ("BNYM"). I submit this declaration (a) in support of BNYM's partial opposition to plaintiffs' motion to compel compliance with the two subpoenas served on BNYM by plaintiff Mati Gill (the "Gill Subpoenas") and the one subpoena served by plaintiff Kelli D.Hake (the "Hake Subpoena"), and (b) in support of BNYM's cross-motion for a protective order. I describe in this declaration how BNYM complied with the Gill and Hake Subpoenas, a process that I oversaw in my capacity as Compliance Manager for FTSI.

2. FTSI is the group within BNYM that is responsible for, among other things, retrieving documents or information from BNYM's databases that is responsive to a subpoena. As was done in response to the Gill and Hake Subpoenas, that information – typically the details of wire transfers in which BNYM served as an intermediary bank – is often then disclosed to the

subpoenaing party in the form of a spreadsheet that organizes and presents the information succinctly. I have been the Compliance Manager for FTSI for approximately ten years, and in that capacity I have been in charge of, and have overseen, FTSI's efforts to comply with non-party subpoenas to BNYM such as the Gill and Hake Subpoenas.

3. When conducting searches to satisfy a subpoena, FTSI will retrieve all of the wire transactions that match the names identified in the subpoena and that fall within the relevant time period. BNYM's system will search the entity requested within each payment field, including the fields for the SWIFT and CHIPS financial messaging systems, whichever system is used for a given wire transfer.[1] The main fields in any wire transfer are those that identify the parties to transfer: the ordering customer (also known as the originator), the ordering bank (also known as the remitter or originator's bank), any intermediary banks, the beneficiary of the wire transfer, and the debit bank (also known as the beneficiary's bank). Those are the main fields that BNYM typically discloses in response to subpoenas served by judgment creditors of a foreign state who are looking for blocked wire transfers that they can attach to satisfy their judgment.

4. As an example of BNYM's standard searches, take one of the "Subject Entities" – National Iranian Oil Company – identified in the Gill Subpoena. A search of that entity in BNYM's system will identify all transactions that contain "National," "Iranian," "Oil" and "Company" within the same field. FTSI reviews the output of the search to identify all wires that should be considered "true" hits, which are typically determined by using any additional identifiers, such as physical addresses, provided in the subpoena. If one or more specific addresses are provided, then only transactions that contain one of those specific addressed would be included in BNYM's output; transactions that contain a different address would be considered

---

[1] SWIFT stands for the Society for Worldwide Interbank Financial Telecommunications, and CHIPS stands for Clearing House Interbank Payment Systems.

false positives. Transactions generated by the search of a person or entity for which no address is provided would be considered "true" and disclosed in response to the subpoena. And if there is any doubt – if FTSI cannot definitively establish that a transaction generated by the search of a person or entity does not involve the entity identified in a subpoena – then FTSI resolves that doubt in favor of the subpoenaing party by including the transaction in the results disclosed to that party.

5. FTSI performs searches of aliases or alternative spellings of a given entity, or of acronyms, in the same way. As to acronyms – such as NIOC for the National Iranian Oil Company – FTSI searches the acronym with two variations: one with no spacing between the letters and the other with spacing (*e.g.*, NIOC and N I O C).

6. As to the Gill and Hake Subpoenas, FTSI performed its searches of the Subject Entities identified in the subpoenas, including aliases and (where applicable) acronyms, in accordance with its standard procedures. The Gill and Hake Subpoenas collectively identify 64 separate Iranian persons and entities and about 175 aliases, and FTSI did searches of all of them for the period, January 1, 2003 to December 31, 2010, called for in the subpoenas. FTSI imposed no limiting criteria on any of its searches except for its searches of three Subject Entities – Bank Markazi, Bank Melli and Bank Saderat – as to which FTSI limited the transactions to ones in which any one of those banks was either the originator, originator's bank, beneficiary's bank or beneficiary in the chain for a given wire transfer.

7. The results of FTSI's searches, including both blocked and unblocked wire transfers, were incorporated into spreadsheets that included SWIFT or CHIPS fields and other fields with salient information about the transfers. The spreadsheets produced to plaintiffs in response to the Gill Subpoenas collectively contained 131 individual wire transfers and

encompassed results from searches of all of the Subject Entities identified in the subpoenas, including aliases and alternate spellings.[2] The spreadsheets responsive to the Hake Subpoena collectively contained 2,218 wire transfer transactions to which one or more of the Subject Entities identified in the subpoena, including their aliases and any alternative spellings, were a party.

8. I understand that plaintiffs now request that BNYM provide a log of all the searches it conducted, with all search terms, to generate the information disclosed in the spreadsheets of transactions produced in response to the Gill and Hake Subpoenas. During my time as Compliance Manager for FTSI, FTSI has never before been asked to prepare such a log, and those in the group who conduct searches do not keep a log of all their searches in the ordinary course. The preparation of such a log here would be an exceedingly laborious and time-consuming process given the large number of Subject Entities, and their aliases, identified in the Gill and Hake Subpoenas. Nor do I have any reason to believe that the log would reveal any Subject Entities, or aliases thereof, that were not searched by FTSI during the process of complying with the Gill and Hake Subpoenas.

Dated: Oriskany, New York
July 24, 2019

_____
CARRIE SEARS

---

[2] I understand that, to maintain the confidentiality of its most sensitive records, BNYM's legal department redacted certain fields, such as account numbers, in BNYM's spreadsheets produced in response to the Gill Subpoenas.